[Cite as *State v. DeMint*, 2018-Ohio-2091.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                          :
                                        :        Case No.  17CA3618
            Plaintiff-Appellee,         :
                                        :
      vs.                               :        DECISION AND JUDGMENT
                                        :        ENTRY
FRANKLIN D. DEMINT,                     :
                                        :
            Defendant-Appellant.        :        **Released: 05/25/18**
_____

APPEARANCES:

Stephen T. Wolfe, Wolfe Law Group, LLC, Columbus, Ohio, for Appellant.

Sherri K. Rutherford, Chillicothe Law Director, Chillicothe, Ohio, and
Benjamin A. Sigall, Assistant Chillicothe Law Director, Chillicothe, Ohio,
for Appellee.

_____

McFarland, J.

{¶1} A jury in the Chillicothe Municipal Court convicted Franklin D.

DeMint of three violations of the Ohio Revised Code: (1) domestic violence,

R.C. 2919.24; (2) assault, R.C. 2903.13; and (3) disorderly conduct, R.C.

2911.17.  Appellant appeals from the trial court's judgment entered

September 25, 2017.  He contends the jury clearly lost its way when it failed

to find that he was acting in self-defense and thus, the verdicts were against

the manifest weight of the evidence.  Based upon our review, we find no

merit to Appellant's argument. Accordingly, we overrule the sole assignment of error and affirm the judgment of the trial court.

FACTS

{¶2} Appellant was charged with domestic violence, assault, and aggravated menacing, all misdemeanors, as a result of a series of events which began over Memorial Day weekend in 2017. The victim was Appellant's wife, Anita Brigner, and the incident took place in the couple's home in rural Ross County. Appellant was arrested and charged on May 28, 2017. He posted the appropriate bond on May 30, 2017. As a condition of his bond, Appellant was ordered to refrain from harming, contacting or bothering Ms. Brigner.

{¶3} Appellant obtained legal representation, pleaded not guilty to the charges, and filed a jury demand. The matter proceeded to jury trial on August 29, 2017. Appellant, Ms. Brigner, and the officer who responded to the incident testified. There was also pictorial evidence of injuries submitted by both parties.

{¶4} Appellant admitted to striking Ms. Brigner once, in self-defense. At the conclusion of trial, the jury found Appellant guilty of domestic violence and assault. Appellant was found not guilty of aggravated menacing but was instead found guilty of disorderly conduct.

{¶5} The matter was set for sentencing on September 25, 2017. On that date, the trial court ordered Appellant to serve a 5-day jail sentence in the Ross County jail, with credit for 2 days previously served; a fine in the amount of $500.00; and a community control sanction of 2 years. Further, Appellant was ordered to have no contact with Ms. Brigner. This timely appeal followed. Additional facts gleaned from the trial testimony are set forth below, where pertinent.

ASSIGNMENT OF ERROR

I.    "THE JURY'S VERDICTS WERE AGAINST THE
MANIFEST WEIGHT OF THE EVIDENCE."

STANDARD OF REVIEW

{¶6} "When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses." *State v. Evans,* 4th Dist. Ross No. 17CA3600, 2018-Ohio-212, ¶ 7, quoting *State v. Topping,* 4th Dist. Lawrence No. 11CA6, 2012-Ohio-5617, ¶ 60. "The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve." *Id.,* citing *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. This is so because "the trier of fact * * * is in the best position to view the

witnesses and to observe their demeanor, gestures and voice inflections and to use those observations to weigh credibility." *State v. Fisher*, 4th Dist. Jackson No. 11CA10, 2012–Ohio–6260, ¶ 9.

{¶7} "Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Quotations omitted.) *See Evans, supra,* at ¶ 8; *Topping* at ¶ 60.  If the State presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that all of the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *Evans, supra,* at ¶ 9; *State v. Cooper,* 170 Ohio App.3d 418, 2007–Ohio–1186, 867 N.E.2d 493, ¶ 16 (4th Dist.).  A reviewing court should find a conviction against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

## LEGAL ANALYSIS

{¶8} Appellant was convicted of domestic violence, assault, and disorderly conduct.  The elements of R.C. 2919.25, domestic violence, provide that "No person shall knowingly cause or attempt to cause physical

harm to a family or household member." The elements of R.C. 2903.12, assault, provide that "No person shall knowingly cause or attempt to cause physical harm to another * * *." And, the elements of R.C. 2911.17, disorderly conduct, provide that "No person shall recklessly cause inconvenience, annoyance, or alarm to another by * * * engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior * * *."

{¶9} Appellant argues that his actions were in self-defense and that he proved this by a preponderance of the evidence. Appellant maintains that he knew Ms. Brigner had anger issues and had previously engaged in violent behavior. Appellant points out that Ms. Brigner returned to the home late at night, unannounced, and kicked the door open. Appellant argues that the evidence demonstrates that he actively tried to avoid confrontation with Ms. Brigner. He also argues the evidence demonstrates that Ms. Brigner had multiple opportunities to leave but chose to prolong the argument and altercation. Furthermore, Appellant contends Ms. Brigner hit him multiple times although he only struck her once in self-defense.

{¶10} The State counters that the jury heard the evidence and was in the best position to personally observe the witnesses and evaluate their credibility. The State points to the photographic evidence which

demonstrates Ms. Brigner sustained a black eye while Appellant received only a small scratch. When hearing two conflicting versions, the jury believed Ms. Brigner and did not believe Appellant's claim of self-defense.

{¶11} At trial, both Ms. Brigner and Appellant testified that the 2017 Memorial Day weekend began with an emergency trip to take Ms. Brigner's sick cat to a veterinary clinic in Canal Winchester. Thereafter, the facts and the characterization of the facts differ. The testimony began with that of Deputy Craig Montgomery of the Ross County Sheriff's Office. Montgomery testified that he was dispatched to a domestic dispute at the couple's home on May 28, 2017. When Montgomery arrived at the scene, Ms. Brigner appeared to be visibly and verbally agitated and angry. She was crying.

{¶12} Deputy Montgomery observed Ms. Brigner had facial swelling, a left eye bruise, and a lip laceration. Based on Ms. Brigner's statements, Montgomery determined that Appellant should be charged with the offenses. He took photographs of her injuries and identified them for the jury.

{¶13} On cross-examination, Deputy Montgomery testified that he attempted to contact Appellant to obtain his statement regarding the incident. By the end of his shift, he had not been successful so he completed his report and filed charges. Deputy Montgomery also testified that he did not recall

seeing signs of physical disturbance in the house. He also recalled that she denied medical treatment.

{¶14} Ms. Brigner identified her husband for the jury and testified they were married on December 31, 2004. They had lived together at the Ross County address where the incident took place since 2001.

{¶15} Ms. Brigner testified the couple had been out late on Friday, May 26th, and when they returned home their cat was lethargic and wobbly on its feet. Ms. Brigner panicked and Appellant yelled at her saying "You're not helping the situation." She calmed down and found an after-hours veterinary clinic in Canal Winchester. Ms. Brigner, Appellant, and Ms. Brigner's granddaughter proceeded to drive to Canal Winchester.

{¶16} Ms. Brigner testified she and her granddaughter were worried about the cat and discussing the situation. The cat was crying in its cage and Ms. Brigner, concerned, asked Appellant: "Do you think it would be okay if we took him out of the cage and let Lilly hold him?" Ms. Brigner testified Appellant immediately started raging and screaming at her. Appellant turned the van around and started heading back to their home. Ms. Brigner testified she said: "Can you please, you know, go. Let me take care of my cat. You are wasting time here. Just go." However, they continued to argue loudly.

{¶17} She further testified that suddenly, Appellant turned into a driveway, got out of the van, and walked away. Ms. Brigner testified she looked at her granddaughter and said "I guess we will go on to the vet." Ms. Brigner testified when they arrived at the veterinary clinic and the cat was being treated, she received texts indicating Appellant was displeased and upset. He told her she should "probably find someplace else to stay for the night." Ms. Brigner testified because she had her granddaughter with her, she totally ignored his comment, returned to their home, and slept on the couch.

{¶18} Ms. Brigner testified the next morning, Saturday, May 27th, she and her son and her granddaughter drove to Morehead, Kentucky to visit another son. They stayed until the evening of Sunday, May 28th, and then headed back to Ross County. Ms. Brigner left her son and granddaughter at different locations and returned to the home she shared with Appellant at approximately 9:00 p.m.

{¶19} She then testified when she arrived home, the door was locked. She attempted to use her key but it did not work. As a result, she kicked the door open with her right foot and testified as she entered, Appellant walked out of the bedroom, completely naked, screaming at her to "get the F out of [his] house." Ms. Brigner replied that it was her house also and she had the

right to come in and get her belongings. Ms. Brigner testified Appellant walked back into the bedroom, retrieved a gun, and pointed it at her chest. According to Ms. Brigner, Appellant said: "I am going to shoot an intruder." He was standing approximately 6-8 feet away from her.

{¶20} Next, Ms. Brigner testified she was stunned and did not know how to react because Appellant had never behaved that way before. They had argued in the past, but it had never become violent. Ms. Brigner replied: "Are you F-ing kidding me?"

{¶21} She testified Appellant eventually lowered the gun and she secured it and another handgun she owned. Ms. Brigner began packing her toiletries in order to leave. She walked into the bedroom and Appellant was standing in her way. The two continued arguing and Appellant began throwing things in the room. Ms. Brigner told him: "Fine. You want to start breaking stuff. Fine. Let's break stuff." She then tipped over the printer.

{¶22} She then testified at that point, Appellant grabbed her by the throat, threw her on the bed, and raised his hand as if he was going to punch her. Ms. Brigner put her hands up to protect herself. Appellant was on top of her and she felt pain. Her right toe was bruised and smashed. She yelled at him to get off her. When he didn't, Ms. Brigner, who was wearing a 1.75

karat diamond ring, swung at him 2 or 3 times.  Ms. Brigner testified her husband is 5 foot 11 inches and weighed approximately 240-250 pounds.

{¶23} Ms. Brigner noticed Appellant was still naked so she grabbed his testicles and started pulling to get him off.  Finally Appellant went into another room.  Ms. Brigner then went to gather her laundry.  Appellant came at her in the laundry room screaming "Your clothes are all packed."  Ms. Brigner testified Appellant grabbed her by the throat, shoved her against the washer, and punched her left eye 3 times.  Appellant kept hitting her and her head hit the washer.  Ms. Brigner yelled at him to stop and finally he did.  Ms. Brigner grabbed her clothes bag, purse and headed to the front door.

{¶24} Then she testified at this point, Appellant said "We're gonna talk.  You're not going anywhere."  Ms. Brigner replied "Are you trying to hold me against my will?"  Ms. Brigner headed out the back door, walked around the pool deck and to her car.  Appellant, still naked, followed her outside and inexplicably fell to the ground.  Ms. Brigner used Appellant's cell phone to call her family and to call law enforcement.  After finishing her call, Appellant went into the house, put on shorts, and drove away in his van.[1]

---

[1] Appellant's testimony regarding the chain of events is confusing.  She later testified the "first wrestling match" and arguing began on the couch.  Appellant tried to wrestle her cell phone away from her.  When he did, he walked to the kitchen and smashed the phone on the sink.  Then she found his phone and put it in her pocket.

{¶25} Ms. Brigner testified she called the authorities approximately 5-10 minutes after the altercation ended. She described her injuries as a puffy, discolored eye, knots on the back of her head, a busted lip, and a smashed toe. She took a photo of her face, 3-4 days after the incident, which showed her black eye. This was identified and admitted as State's Exhibit A. Ms. Brigner testified the black eye was caused by Appellant's punching her on May 28th.

{¶26} On cross-examination, Ms. Brigner testified she is 5 feet, 8 inches tall and weighs approximately 220 pounds. She admitted she received text messages from Appellant after she left him on the road, and she knew he was upset. She admitted she did not tell him she was coming back to the house. She admitted when the altercation happened, he had been released from the hospital on a diagnosis of acute renal failure for approximately 3 days. She also admitted when Appellant got off the bed, he was bleeding.

{¶27} Ms. Brigner admitted since the events happened, the couple has had communication and has been on a few dates. She admitted that nothing like that had happened between them in 17 years together.

{¶28} By contrast, Appellant testified Ms. Brigner had anger issues and that she had assaulted him several times over the years. He testified he

tried to avoid arguments but she attempted to provoke him to strike her. According to Appellant, in the past, Ms. Brigner has hit him in the shoulders and broken a broom over his back.

{¶29} Appellant testified in the days prior to the altercation, he had been hospitalized at the Veteran's Hospital for acute renal failure secondary to dehydration. He was released on Wednesday prior to Memorial Day weekend. Appellant testified on that Friday, he had worked in Cincinnati and met Ms. Brigner and others at Olive Garden for dinner. Appellant testified when they returned home around 10:30 p.m. and found the cat in distress, they then left around 11:00 p.m. to take it to a veterinary clinic.

{¶30} Appellant was driving. The cat was crying loudly and Ms. Brigner asked him about taking it out of the carrier. Appellant testified he explained to her it was not safe to let the sick cat out in the van. He testified at that point, Ms. Brigner "went off" on him. Her granddaughter was crying. Appellant told them to calm down but Ms. Brigner kept arguing with him. Finally Appellant said "I'm not going to put up with this. I'm going to turn around and head back home."

{¶31} Ms. Brigner continued yelling so Appellant said "Okay, I will just get out and I will walk home." Appellant explained he thought maybe his getting away from her would de-escalate the situation and Ms. Brigner

would realize that she should not let him - recently released from the hospital - walk 8-10 miles. However, Appellant testified he ended up walking quite a distance and was picked up approximately 2 miles from home.

{¶32} Appellant testified he texted Ms. Brigner while she was at the vet clinic. Then they had an argument at the house the morning before she left for Morehead. Ms. Brigner yelled at him and attempted to provoke him. Appellant told her: "I need to reevaluate when you put the cat above me." He did not go on the Morehead trip because he knew it would be an argument the entire time they traveled. The last physical contact Appellant had with Ms. Brigner was Saturday morning.

{¶33} Appellant testified they texted back and forth on Saturday. She was calling him names and he could interpret from the texts she was not seeing his side of things. As such, Appellant thought it best to change the locks. Appellant testified "Basically I wanted to avoid what ended up happening that night." He testified he mentioned going to see a divorce attorney, but Ms. Brigner "took it too much to heart."

{¶34} Appellant testified on Sunday night of the 28th, around 9:00 p.m., he was taking a bath. He heard someone bursting into the house and was startled. He could not see the front door from the bathroom. Appellant

grabbed Ms. Brigner's gun on the nightstand and yelled "Get out." Then Appellant ran to the living room and saw her at the damaged front door, so he put the gun down on the kitchen island. Appellant testified he did not recall saying anything about the gun and once he realized it was her, he didn't point it at her.

{¶35} Appellant testified that Ms. Brigner started screaming and saying "Let's see what I can break of Frank's." Ms. Brigner came to the bedroom and he retreated inside. She knocked over the printer. They were standing face to face at the end of the bed and Ms. Brigner asked him if he was having an affair. Appellant denied he was having an affair, but and she hit him 5 or 6 times with her left hand. Appellant did not try to stop her, and finally she stopped on her own. Appellant had a cut from her diamond ring on his face and was dripping blood.

{¶36} After the incident in the bedroom, the couple went into the living room and argued more. Appellant had already packed Ms. Brigner's clothes. She went to the laundry room to get more clothes. Then Ms. Brigner told Appellant she was going to try to ruin his career and began hitting at him again. At this point, Appellant testified he took one defensive punch and punched her left eye with his right hand.

**{¶37}** Appellant testified that he fought back for the first time ever because she had actually injured his face and he was afraid she would continue to do so. He also testified that due to his recent illness, he probably was not at the "greatest mental state" at the time. Appellant identified an image of his face taken at the Adena ER. Appellant also identified Defense Exhibit 1, photographs showing scratches on his neck.

**{¶38}** Appellant testified they ended up outside. He was still trying to talk to her and explain she was irrational about the cat situation but Ms. Brigner just wanted to argue. Appellant became lightheaded and collapsed. Once he was able, he went into the house, got some shorts, and drove himself to the Adena ER.[2] While at the ER, he spoke to a patient advocate and explained his side of the story. Appellant was arrested at the ER and held in jail for approximately 36 hours.

**{¶39}** On cross-examination, Appellant testified he changed the locks to make it clear the house was his. He wanted Ms. Brigner out because he knew she would continue to argue.

**{¶40}** Appellant testified since the incident, he and Ms. Brigner have gone on some dates and attempted reconciliation. Although his wife falsely accused him, he wants to reconcile because they have been together a long

---

[2] Appellant clarified that he had to return to the house to get his phone and his wallet. His brother-in-law retrieved his wallet but he could not find his phone. He first went to the VA Urgent Care, but ultimately ended up at Adena ER.

time.  He admitted that he spoke to his wife at a pretrial hearing on August 24th, but he did not recall advising her not to appear.

{¶41} On rebuttal, Ms. Brigner testified she visited Appellant during his hospitalization at the VA.  Although his blood work showed acute renal failure, Appellant downplayed it as "not a big deal."  She testified she did not recall the encounter with him Saturday morning before leaving for Morehead, and she did not recall receiving texts from him while she was gone.

{¶42} Ms. Brigner further testified once she came into the house, he screamed at her to leave and got the gun.  She testified he punched her 4-5 times.  Before the hearing date on the 24th, he suggested that she not show up to court.  Then at the hearing, he told her she could take the Fifth and not testify.  Ms. Brigner testified once she refused to drop the case, he sent her a text message telling her he was going to turn off the phone, cancel the insurance, and the marriage was over.

{¶43} On rebuttal cross-examination, Ms. Brigner admitted she decided to sit next to him in court because they had been talking about reconciliation. And, she denied any other instances of violence over the years, such as punching him and breaking a broom over his back.

{¶44} Having examined the record, we find the State presented substantial evidence upon which the trier of fact reasonably could conclude beyond a reasonable doubt that all of the essential elements of the charges of which Appellant was convicted had been established.  Based upon the testimony set forth above and at trial, as well as the pictorial evidence of physical injuries, the jury reasonably concluded that Appellant knowingly caused physical harm to another, Ms. Brigner, his wife.  And, based upon the testimony set forth, the jury reasonably concluded that Appellant recklessly caused inconvenience, annoyance, or alarm by engaging in fighting with Ms. Brigner or by the violent and turbulent behavior.

{¶45} Given the above evidence, we do not find the jury somehow lost its way or that evidence weighed heavily against Appellant's convictions.  Appellant admitted striking his wife once.  The pictorial evidence demonstrates Ms. Brigner had a black eye, redness around her neck, and a laceration inside her lip.  Ms. Brigner testified Appellant struck her more than one time.  The jury obviously found Ms. Brigner's version of the events, which resulted in her injuries, to be more credible than Appellant's version of the events.  We are mindful that the jury was in the best position to view Appellant and Ms. Brigner, observe their demeanor, gestures, and voice inflections, and to weigh their respective credibility.

{¶46} Appellant argues, however, that he proved his action in striking Ms. Brigner once was justified as he was acting in self-defense. The trial court instructed the jury on self-defense as follows:

> "Franklin DeMint claims to have acted in self-defense. To establish that he was justified in using force in self-defense, he must prove:
>
> A) He was not at fault in creating the situation giving rise to the incident; and,
>
> B) He had reasonable grounds to believe, and an actual belief, even though mistaken, that he was in imminent danger of bodily harm."

{¶47} Appellant argues he proved his actions were in self-defense because the evidence shows she had anger issues and prior violent behavior. Appellant maintains he actively tried to avoid confrontation by requesting that Ms. Brigner not return to the home and changing the locks in an effort to avoid a surprise entrance. He points out that, by contrast, Ms. Brigner returned to the home unannounced, kicked open the door, and prolonged the encounter despite multiple opportunities to leave.

{¶48} For the foregoing reasons, we find Appellant failed to prove by a preponderance of the evidence that he acted in self-defense. We further find the jury's verdicts are not against the manifest weight of the evidence. Accordingly, we overrule the sole assignment of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Abele, J.:  Concur in Judgment and Opinion.

For the Court,


BY:  _____
Matthew W. McFarland, Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**